**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**RAWLE O'GARRO,**

            **Plaintiff,**

**-vs-**                                                      **Case No. 6:08-cv-1807-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

            **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits and Supplemental Security Income benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties[1] in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.    Procedural History**

Plaintiff filed for a period of disability, Disability Insurance Benefits and Supplemental Security Income Benefits on April 18, 2005, alleging an onset of disability on October 29, 2003, due to chronic headaches, shoulder pain with injury related deformity, cervical and back pain, depression

---

[1] The briefs in this case were especially well-written and well organized.

and anxiety, and elevated liver issues. R. 111-13, 123, 138, 145, 155, 173, 332-47. His application was denied initially and upon reconsideration. R. 67-69, 71. Plaintiff requested a hearing, which was held on May 8, 2007, before Administrative Law Judge Robert Marcinkowski (hereinafter referred to as "ALJ"). R. 323-47. In a decision dated May 30, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 39-48. Plaintiff timely filed a Request for Review of the ALJ's decision, and on September 13, 2007, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ (Tr. 50-52). Following a second hearing on February 6, 2008 (R. 348-83), the ALJ issued a decision dated February 25, 2008, finding Plaintiff not disabled. R. 17-29. The Appeals Council denied Plaintiff's request for review on August 29, 2008. R. 10-13. Plaintiff filed this action for judicial review on October 20, 2008. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff was 36 years old on his alleged onset date and 41 years old at the time of the ALJ's decision. R. 111. He has a high school education and past relevant work as a carpenter, carpet cleaner, and floor waxer. R. 352, 371.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of lower back pain, shoulder pain, and headaches, following an on-the-job injury on October 29, 2003 when he fell ten feet from a ladder onto concrete. R. 111, 145, 332. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from left shoulder impingement syndrome and post-traumatic headaches, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work,

with only occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; and only occasionally using the left arm for reaching and handling. R. 20. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not entirely credible for the reasons set forth in the body of the decision. R. 24. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 26. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a callout operator, and surveillance system monitor. R. 26-27. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 27.

Plaintiff now asserts two points of error. First, he argues that the ALJ erred by finding he had the RFC to perform sedentary work contrary to his treating doctor's opinion concerning debilitating headaches. Second, Plaintiff contends the ALJ erred by failing to properly consider Plaintiff's inability to meet the physical demands of work activity. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## *III. ISSUES AND ANALYSIS*

### A. Plaintiff's RFC and Dr. Sharfman's opinion

Plaintiff claims that the ALJ should not have found him able to perform sedentary work, contrary to the opinion of Dr. Sharfman that Plaintiff suffered from daily post-traumatic headaches that last for several hours and preclude him from doing any work. The Commissioner contends the ALJ properly considered Dr. Sharfman's assessment, but gave it little weight because Dr. Sharfman's treatment notes were not consistent with the extreme limitations he prescribed.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

On or about October 29, 2003, Plaintiff fell ten feet from a ladder while at his carpentry job. R. 332. He alleged that as a result of the fall, he suffers from chronic headaches, shoulder pain with

injury related deformity, cervical and back pain, depression and anxiety, and elevated liver issues. R. 332-47. Plaintiff was initially treated by an orthopedist, Dr. Jones, and subsequently by Dr. Marc Sharfman, a board certified neurologist. R. 243-93, 296-301, 305-10. Dr. Sharfman treated Plaintiff for more than five years for chronic headaches, cervical and back pain, and shoulder pain with injury related deformity. R. 243-93, 296-301, 305-10.

In a form dated January 29, 2008, Dr. Sharfman opined that Plaintiff experienced daily post-traumatic headaches that last for several hours, and when experiencing a traumatic headache, Plaintiff cannot participate in any physical activity, and has no ability to lift, and limited ability to drive, stand, sit, or walk. R. 307, 310. Without headaches, Dr. Sharfman limited Plaintiff to lifting 20 pounds occasionally, standing one to two hours in an eight hour day; sitting two to four hours; walking for 300 yards; driving for two to four hours; occasionally bending, stooping, and crouching; no crawling; and occasionally performing activities requiring close visual acuity. R. 307-08. Plaintiff contends that Dr. Sharfman's opinion should not have been rejected as based solely on Plaintiff's subjective complaints, because they were based on Dr. Sharfman's long history of treating the patient and the subjective complaints are consistent with the objective findings, including a positive MRI of the Cervical Spine[2] and a fracture to the left humerus. R. 308. Plaintiff is also critical of the ALJ's reliance on Dr. White's opinion, which he argues was inconsistent, in that the ALJ both rejects and accepts the opinion of Dr. White in the same sentence, when the ALJ states: "The undersigned also has considered and accords great weight to the opinions of Dr. White . . . however, the, undersigned does not concur with Dr. White's report that the claimant was unable to work with headaches." R.

---

[2]Although Dr. Sharfman refers to a September 18, 2006 MRI (R. 309), the MRI report is not in the record.

-6-

25-26. Plaintiff argues that the ALJ's decision to rely "so heavily on Dr. White is illustrative of the deficiencies of the ALJ's handling of the medical evidence is his decision."

The ALJ found that Plaintiff had the RFC to perform sedentary work, except to only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, avoid climbing ladders, ropes, or scaffolds, and only occasional use of the left upper extremity for reaching and handling. R. 20. The ALJ first accurately describes Plaintiff's on-the-job injury and Dr. Sharfman's treatment of Plaintiff:

> The claimant also alleged headaches, shoulder and back pain, and liver problems. The medical records show that on October 29, 2003, the claimant presented himself to the Emergency Room for complaints of forearm injury with pain, the result of a work-related fall off a ladder. The impression was non-displaced humeral mid-shaft fracture. The x-ray films of the left humerus revealed acute mid-shaft fracture of the left humerus.
>
> * * *
>
> On March 17, 2004, Dr. Marc I. Sharfman, a consulting neurologist, diagnosed the claimant with post-traumatic muscle tension type headache, cervicocranial and cervicobrachial syndrome, and possible post-traumatic nerve trauma. The claimant presented daily pressure-like headaches upon awakening occurring variably throughout the day, posterior in location, with lightheaded dizziness. The claimant also related daily severe neck pain radiating into the left arm with associated numbness and weakness of the left arm aggravated by movement. The x-ray films of the cervical spine dated May 5, 2004, revealed mild C5-6 spondylosis. On a follow-up visit, the claimant complained of persistent headache, neck pain and left arm symptoms. The claimant also was diagnosed with a stress disorder. Dr. Sharfman reported that the claimant was on maximum medical improvement as October 4, 2004.
>
> * * *
>
> In a Medical Questionnaire dated April 3, 2007, Dr. Sharfman reported a diagnoses of left humerus fracture, disc osteophyte, and an 8 mm spinal column stenosis. He opined that the symptoms and associated functional impairments had continued and could reasonably be expected to persist to the same or greater degree for at least 12 consecutive months. He also reported that the claimant developed an adjustment disorder with mixed anxiety/depression stress secondary to the October 29, 2003 accident. The doctor specified that the claimant had cervical spine spasm, moderate decrease in range of motion; left arm, decreased range of motion at the shoulder; angulation (bowing) of the left humerus; and decreased bulk in the left deltoid.

-7-

> On September 11, 2007, Dr. Sharfman followed-up the claimant and reported diagnoses of humerus fracture, post-traumatic cervicobrachial syndrome, and adjustment disorder. The doctor reported that the claimant had daily headaches lasting for several hours causing irritability. The doctor added that the claimant was unable to work while suffering a headache. In a follow-up visit, Dr. Sharfman reported that the claimant remained symptomatic. The doctor also reported diagnoses of cervicocranial syndrome, post-traumatic headache, and possible traumatic brain injury.

R. 22-23.

The ALJ then explained why, in great detail, he discounted Dr. Sharfman's opinion, based on the medical evidence in its entirety:

> The undersigned has considered and accords little weight to the opinions of Dr. Sharfman who opined that the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; could stand/walk for 1-2 hours total in an 8-hour workday; and could sit for 2-4 hours total in an 8-hour workday. Dr. Sharfman's opinion is not supported by the medical evidence of record in its entirety. On initial physical examination, Dr. Sharfman reported that the claimant was a well-developed, well-nourished, well-groomed individual. The claimant was alert and oriented times three. The recent and remote memory was intact with good attention span and concentration. There was good fund of knowledge regarding current events and past history. The claimant was able to move all fingers and wrist against resistance. The claimant related pain, however, he was able to feel all modalities in the left arm and other extremities.
>
> At the hearing, when the claimant was questioned whether or not Dr. Sharfman had asked him any questions regarding the completion of the Treating Source Assessment of Ability to Perform Work-Related Activities, the claimant responded that he did not remember whether or not he discussed this with the doctor. The undersigned also notes that the limitations rated in Exhibit 12F [R. 308-10] appeared to be self-reported by the claimant to Dr. Sharfman. For instance, how would the doctor know that the claimant only could walk for 300 yards in an 8-hour workday, without headaches.
>
> In support of these conclusions, the undersigned references the lack of significant findings by the treating examinations. Upon physical examination, the claimant reported that he was making good progress in therapy with regards to the left wrist. The claimant also reported that Naprosyn and Flexeril had been of benefit. Dr. Jones reported that the claimant was healthy appearing in no acute distress. The radial nerve and neurovascular examination were intact. The radiographs of the left wrist and hand were satisfactory.
>
> * * *

> The undersigned also has considered and accords great weight to the opinions of Dr. White who reported that the claimant could do light duty work, however, the undersigned does not concur with Dr. White's report that the claimant was unable to work with headaches. The inability to work with headaches conflicts with his own opinion that the claimant could do light duty. Dr. White reported that the claimant had all but the last 5 degrees of abduction. The claimant had good forward flexion. The x-ray films of the left humerus and the left shoulder showed a well-healed humeral fracture and abundant callus. The claimant only had **some mild** (emphasis added [by the ALJ]) residual discomfort in the left shoulder; however, the x-ray examination was normal. Dr. White reported that the claimant was doing better with better range of motion and mobility. On initial examination, Dr. White reported that the wrist range of motion was good with full extension and flexion.

R. 25-26.

Plaintiff argues that Dr. White is an upper extremity specialist who only treated Plaintiff for a short period, and that treatment was limited to Plaintiff's arm and hand (R. 212-26), as opposed to Dr. Sharfman who is a Board Certified Neurologist, who treated Plaintiff for more than five years for chronic headaches, cervical and back pain, and shoulder pain with injury related deformity. R. 243-93, 296-301, 305-10. Plaintiff argues that Dr. White's opinion does not directly conflict with Dr. Sharfman's because they have different areas of speciality and treatment provided to Plaintiff, and the ALJ should not have used his opinion as substantial evidence in rejecting the opinions of Dr. Sharfman.

Plaintiff also argues that the ALJ failed to recognize that "the evidence as a whole was produced within the artificial confines of the adversarial Florida Workers' Compensation system, in which a claimant's injuries are regarded in parts, rather than an individual as a whole," which in this case consisted of injuries to the cervical spine, shoulder, arm and head with chronic pain; Dr. White's opinions were limited to Plaintiff's upper extremity – his shoulder and arm – and within Workers' Compensation were limited to those portions of Plaintiff's body he treated. Additionally, his

-9-

treatment of Plaintiff was last rendered in March 31, 2005, more than two years before the first hearing of this case. R. 212-26.

As of the last clinical visit in 2005, Dr. White imposed restrictions not only on Plaintiff's ability to lift and carry relative to his upper extremity function, with no over shoulder level lifting or any repetitive lifting, pushing or pulling, and found Plaintiff at Maximum Medical Improvement with regard to his upper extremity. Plaintiff argues that "Maximum Medical Improvement (MMI)" is a clinical attainment at which the individual is not reasonably expected to significantly become better or increase his/her function; it does not preclude the possibility that the condition could become worse, nor that function could decrease. Plaintiff contends that the ALJ erred in essentially dismissing the opinion of Dr. Sharfman, who had the most global and longitudinally greatest experience with Plaintiff's overall medical condition and in according "great weight" to Dr. White's opinions and findings. Plaintiff also argues that the ALJ improperly discounted Dr. Scharfman's opinions, which were supported with specific clinical findings he listed, and failed to clearly articulate the reason for this rejection based on the substantial evidence.

The Commissioner responds that the ALJ considered all of the evidence, including the opinions of record and Plaintiff's testimony, and properly gave the greatest weight to the assessment from Dr. White, the treating orthopedist. R. 25. The Commissioner argues that the ALJ extended considerable benefit of the doubt to Plaintiff's subjective complaints, finding him limited to sedentary work, even though all of the other physicians of record, including Dr. White, only limited Plaintiff to light work.

As an initial matter, Plaintiff incorrectly alleges that Dr. Sharfman began treating Plaintiff shortly after Plaintiff's October 29, 2003 industrial accident; however, Dr. Sharfman's treatment of

-10-

Plaintiff did not begin until March 17, 2004, nearly six months after the accident. R. 268.  Dr. Jones began treating Plaintiff two days after his October 29, 2003 on-the-job injury.  R. 211.  He assessed Plaintiff's arm fracture and did not recommend surgery, but opted to treat it conservatively with Naprosyn, Flexeril and splints.  R. 207.  Seven days later, Plaintiff experienced "dramatic improvement" in the fracture position, as noted by Dr. Jones.  R. 206.  In those first six months after the accident before Plaintiff ever saw Dr. Sharfman even though he complained of headaches, Dr. Jones placed Plaintiff on light duty, sitting work only, with no use of the left upper extremity, and with no driving.  R. 194-207 (October 2003 to February 2004).  Plaintiff was actually assigned to light duty by his employer, where he sat and filed papers in an office during that time; his last day at work was May 30, 2004 and he had earnings of $10,404.  R. 133, 330, 341.  The ALJ did not consider the work after October 29, 2003 to be substantial gainful activity because Plaintiff testified that he could rest at any time.  R. 19.

Dr. Jones repeatedly requested a consultation for Plaintiff with a neurologist due to his persistent headaches.  R. 194.  In March 2004, Dr. Sharfman was first authorized for consultation by the insurer, and saw Plaintiff on March 17, 2004; he continued to treat him through December 2007.  R. 305.  Dr. Sharfman noted on Plaintiff's first visit that he complained of headache and movement of the bone and pain in upper left arm, with a curve to the back of the left arm.  R. 268.

As the Commissioner notes, Dr. Sharfman consistently deferred to the orthopedist opinion's regarding Plaintiff's work status.  Plaintiff requested an opinion by a second orthopedist (aside from Dr. Jones) when he saw Dr. Sharfman, who placed him on light duty with no lifting "via orthopedic."  R. 271-72.  On April 22, 2004, Dr. Sharfman notes that Dr. Jones had recommended to Plaintiff to obtain "additional opinions."  R. 265.  Dr. Sharfman notes that Plaintiff "continues to work."  R. 265.

Plaintiff began treatment with Dr. White on June 18, 2004. R. 225-26. September 2004 x-rays showed that the left humerus was well-healed but Plaintiff had some arthritis in his left shoulder (R. 221) and from September 2004 until December 2004, Dr. White (like Dr. Jones, the predecessor orthopedist) consistently limited Plaintiff to light duty work, no lifting over 20 pounds, no over-the-shoulder lifting, repetitive lifting or pushing and pulling, but noted that Plaintiff was not at maximum medical improvement . R. 218-19, 221. As the Commissioner points out, these limitations, offered while Plaintiff was still recuperating, are less restrictive than the ALJ's ultimate RFC finding.

According to Dr. Sharfman's notes, an April 29, 2004 EMG nerve conduction study of the left upper extremity and a May 5, 2004 CT of the brain were both normal. R. 259, 263, 264. An x-ray of the cervical spine showed mild disc space narrowing at the C5-6 level and mild uncovertebral joint hypertrophic degenerative changes were suspected. R. 262. There was a small linear foreign body identified overlying the C6-7 level on lateral view, but no acute osseous abnormality was identified. R. 262. Therapy was helpful. R. 259.

As of June 8, 2004, Dr. Sharfman continued Plaintiff on light duty with no lifting, pushing or pulling over one pound with his right (uninjured) arm and no use of his left arm. R. 260. In June 2004, Dr. White, an orthopedist, began treating Plaintiff for ongoing pain and restricted range of motion in his left arm. R. 225. Dr. White reported in July 2004 based on a CT scan of Plaintiff left humerus that there was a "humeral non-union." R. 223. He concluded that Plaintiff's left arm fracture had not healed properly and recommended Plaintiff use a bone stimulator, and restricted Plaintiff to no use of the left arm. R. 223. Dr. Sharfman modified Plaintiff's work status on July 20, 2004 to require a "fan at work or air conditioning to prevent worsening of symptoms . . . per Dr. White." R. 257-58. On August 23, 2004, Dr. Sharfman noted some improvement of Plaintiff's

headache, neck pain and left arm symptoms. R. 256. In October 2004 – one year after the injury – Dr. Sharfman again noted that Plaintiff "had undergone thorough evaluation and treatment with improvement of headache and neck pain and persistence of left upper extremity symptoms under Dr. White's care." R. 255. Under "work status," Dr. Sharfman obviously deferred to the orthopedist, writing "Dr. White." R. 255. Dr. Sharfman noted that Plaintiff remained at maximum medical improvement with at least 5% permanent and partial impairment. R. 254. On February 1, 2005, Dr. Sharfman noted that Plaintiff complained of headaches, daily in occurrence, with radiation to the neck; he requested headache symptom medicine only, and his work status was modified for neurologic symptoms and "orthopedics per orthopedics." R. 252-53.

In March 2005, four months after Dr. White, the orthopedic surgeon, performed a shoulder arthroscopy, he concluded that Plaintiff had reached MMI and had a six percent impairment rating. R. 212. Dr. White at that point gave Plaintiff permanent restrictions of no lifting more than 30 pounds, no over-the-shoulder lifting, no repetitive lifting, and no pushing or pulling. R. 212. Dr. White's March 2005 restrictions, upon Plaintiff reaching MMI, and are considerably less restrictive than the ALJ's determination that Plaintiff only retained the residual functional capacity (RFC) to perform sedentary work, with only occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; and only occasionally using the left arm for reaching and handling. R. 20. Dr. White's assessment is consistent with Dr. Jones' treatment records from the time of the accident in October 2003 to March 2004, when his treatment of Plaintiff ceased.

On April 5, 2005, Dr. Sharfman also placed Plaintiff at neurological maximum improvement, but opined that Plaintiff required continued care. R. 251. Dr. Sharfman stated that Plaintiff's work

status was determined by "Dr. White." R. 251. Plaintiff's headaches increased in June 2005, and his work status is noted as "modified" but "no modified job duty available." R. 250. An MRI of the brain was negative. R. 249. In September 2005, lab results showed Plaintiff to have elevated liver functions. R. 246. By late 2005, work status was still being decided according to "Dr. White" and Dr. Sharfman ordered an MRI of the spine; he noted Plaintiff had 5% maximum medical improvement. R. 244, 277-78. In February 2006, Plaintiff was prescribed no new medications (although still on Oxycontin) because of the elevated liver function. R. 279. Dr. Sharfman noted that Dr. White had Plaintiff on light duty, but "there is no light duty. Vocational rehabilitation has been recommended. Does not feel capable until he feels better"; as to the functional limitations form, Plaintiff was restricted "via Dr. White." R. 279, 282. By April 2006, the workers compensation insurer had approved Dr. Sharfman to continue treatment of Plaintiff for headaches *only*; functional limitations, according to Dr. Sharfman, were still to be determined "via others." R. 283, 286. In June 2006, work status is listed as "permanent restrictions from Dr. White" and the twenty pound lifting restriction is "via Dr. White." R. 289-90.

There is no mention in any of Dr. Sharfman's treatment notes during 2005 to 2006 of Plaintiff's inability to work due to debilitating headaches. To the contrary, Dr. Sharfman defers to Dr. White (and makes no comment to contradict the predecessor orthopedist Dr. Jones), even though he is aware at certain visits that Plaintiff complains his headaches increased (June 2005), or he must take a reduced amount of pain medication because of elevated liver problems (February 2006), or that Plaintiff subjectively feels that "he does not feel capable until he feels better." Dr. Sharfman acceded to Dr. White's opinion that Plaintiff could work light duty, but there was no light or modified duty work for Plaintiff at that time. While noting that Plaintiff "does not feel capable of work," Dr.

-14-

Sharfman also notes that he discussed "subjective versus objective" with Plaintiff, which the Court interprets as Plaintiff's "subjective" belief in his ability to work versus the objective medical support on his ability. R. 298. Dr. Sharfman consistently lists the lifting restrictions established by Dr. White (and/or consistent with Dr. Jones' light duty restrictions set immediately after Plaintiff's injury), and during the initial seven months following Plaintiff's injury, Plaintiff continued to work under Dr. Jones' light duty restriction (in late 2003 to May 2004 immediately after Plaintiff's accident) when such work was available.

Five months after Plaintiff's last 2006 office visit in which Dr. Sharfman noted Plaintiff's "work status"[3] (R. 289), *i.e.*, November 13, 2006, Dr. Sharfman completed a "Medical Statement Regarding Headaches for Social Security Disability Claim" opining that Plaintiff suffered from post-traumatic headaches and irritability on a daily basis for several hours, and he was unable to work while suffering from these headaches. R. 243. On April 3, 2007, without any change in treatment notes since April 2006, Dr. Sharfman completed a form prepared and submitted by Plaintiff's counsel. R. 296. Dr. Sharfman opined that Plaintiff's symptoms had an objective, organic cause, based on his fractured left humerus and the "MRI of his cervical spine, dated September 18, 2006" which showed a "disc osteophyte" and "8 mm spinal column stenosis." R. 296. The September 18, 2006 MRI is not in the record, although in treatment notes from more than one year later, December 2007, Dr. Sharfman also refers to "last MRI showed spinal canal down to 8mm." R. 305. However, the only x-ray of the spine in the record is from May 5, 2004 and showed mild spondylosis at the C5-6 level and no acute osseous abnormality (R. 259, 262), and there is no allegation of any particular change in the condition of Plaintiff's spine in the record. In the April 2007 letter, Dr. Sharfman

---

[3]Plaintiff apparently saw Dr. Sharfman on August 21, 2006 for "status" and no treatment was provided; Dr. Sharfman was attempting to obtain authorization or denial for Plaintiff's treatment, which he had not received.

opined that Plaintiff suffered from cervical spine spasm, moderate decreased range of motion, left arm decreased range of motion at shoulder; angulation or bowing of left humerus; and decreased bulk in left deltoid. R. 296-97.

As the Commissioner notes, Dr. Sharfman saw Plaintiff regularly from March 2004 until August 2006, but between August 2006 and his January 29, 2008, assessment, he saw Plaintiff just two times, on September 11, 2007, and December 11, 2007 (R. 298, 305). Dr. Sharfman's notes from September 11, 2007 show under "work status: modified" that Plaintiff "does not feel capable of work. Discussed subjective versus objective." R. 298. In December 2007, Dr. Sharfman again noted that "the patient does not feel capable of work." R. 305. However, Dr. Sharfman did not note any deterioration in Plaintiff's condition, other than Plaintiff's own subjective belief that he did not feel capable of working. R. 298, 306.

The ALJ's decision to discount the opinion of Dr. Sharfman and credit Dr. White's opinion was based on evidence that Dr. Sharfman himself deferred to Dr. White and adopted the functional limitations that Dr. White assigned, and the lack of evidence to support Dr. Sharfman's opinion that Plaintiff suffered debilitating headaches. Accordingly, the ALJ's decision was based on substantial evidence.

### B.     Assessment of RFC

Plaintiff contends that the ALJ erred in assessing his residual functional capacity (RFC) by failing to properly consider Plaintiff's inability to meet the physical demands of work activity, including his inability to stand, sit, stoop, do over-the-shoulder lifting or repetitive lifting, pushing or pulling. Plaintiff does not challenge the ALJ's finding that Plaintiff's impairments prevented him from performing his past relevant work, but argues that the ALJ's erroneous RFC assessment bears

-16-

on Plaintiff's ability to do "other work" in the national economy at step five. Plaintiff also argues that the ALJ erred in finding Plaintiff's limitations did not preclude him from engaging in a limited range of sedentary work. R. 20. The Commissioner argues that the ALJ's RFC finding was intrinsically a function-by-function assessment that properly complied with the social security regulations.

The ALJ concluded that Plaintiff retained the capacity to perform sedentary work, "except to only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, avoid climbing ladders, ropes, or scaffolds, and to only have occasional use of the left upper extremity for reaching and handling." R. 20, Finding 5. Plaintiff contends that the ALJ failed to follow the guidance of Social Security Ruling 96-9p, which gives guidance regarding the erosive effect any physical limitation may have on the "unskilled sedentary occupational base," such as the sitting requirement that an individual performing sedentary work must be able to remain seated for approximately 6 hours of an 8-hour workday and able to stand and walk for a total of two hours in an eight hour workday. *See* SSR 96-9p, Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, 1996 WL 374185[4]. Plaintiff argues that under the SSR, a complete inability to stoop significantly erodes the unskilled sedentary occupation base and "a finding that the individual is disabled would usually apply." *Id.*

Plaintiff once again argues that the ALJ failed to properly consider the opinions of Dr. Sharfman who opined that Plaintiff suffers from debilitating post-traumatic headaches that occur daily and last for several hours, precluding him from lifting any weight, and severely limiting his ability to stand, sit, or walk, and making him unable to bend, stoop, crouch, or crawl, or do any work

---

[4] http://www.ssa.gov/OP_Home/rulings/di/01/SSR-96-8p-di-10.html.

requiring close visual acuity and/or scrutiny, and required that Plaintiff would be required to lay down for two to three hours a day on a daily basis in a typical week. R. 307-10.

Plaintiff argues in the alternative that, even discounting Dr. Sharfman's opinion regarding Plaintiff's chronic headaches, Dr. Sharfman also opined that Plaintiff would not be able to sit for longer than 30 to 60 minutes at a time and would be limited to 2 to 4 hours in a single day, would be limited to standing for 15 to 30 minutes and not longer than 2 hours in a day, and he would only occasionally be able to stoop, bend, or crouch. R. 307-09. He argues that the ALJ specifically ignored the restrictions regarding stooping, bending, crouching, sitting and standing in determining Plaintiff had the RFC to perform sedentary work.

Plaintiff re-argues several of the arguments he made regarding the ALJ's rejection of Dr. Sharfman's opinion. For the reasons already stated above, the ALJ's discounting of Dr. Sharfman's opinion was based on substantial evidence. The only unique argument Plaintiff makes is that the ALJ should not have relied on the opinion of Dr. White as a "hand specialist" who only treated Plaintiff's arm and hand and recommended only those types of restrictions (such as lifting and pulling), while Dr. Sharfman's restrictions are related to the entire body, and Dr. Sharfman is the only medical provider who addressed Plaintiff's ability to stoop, bend, crouch, stand or walk. Plaintiff contends that neither Dr. White nor any other provider addressed such overall restrictions because, in Dr. White's case, he was a specialist who would not be qualified to give Plaintiff restrictions based on body parts he has never examined or treated. Plaintiff argues that the ALJ erred in failing to even discuss Plaintiff's inability to stand or sit for long periods, and in summarily concluding that Plaintiff is able to occasionally stoop and bend.

The Commissioner argues that the ALJ's RFC finding encompassed all of Plaintiff's reasonable limitations, and contends that to the extent Dr. Sharfman limited Plaintiff to "never" bending, stooping, crouching, and crawling, he indicated that this was while he was experiencing debilitating headaches, the severity of which the ALJ rejected. More importantly, Dr. Sharfman did opine that Plaintiff *could* occasionally bend, stoop, and crouch, as long as he was not experiencing headaches. R. 308. The Commissioner argues that, even though no other physician assessed any limitations in these areas, the ALJ gave Plaintiff the benefit of the doubt and found that he could occasionally stoop, kneel, crouch and crawl, which is essentially consistent with Dr. Sharfman's assessment[5]. R. 20, Finding 5.

The ALJ properly discussed the relevant evidence in rejecting Dr. Sharfman's opinion regarding Plaintiff s debilitating headaches, and substantial evidence supports the ALJ's conclusion finding that Plaintiff could perform a significant range of sedentary work with the restrictions that the ALJ imposed.

## *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. Fundamentally, the ALJ simply made a factual determination regarding the severity and effects of Plaintiff's headaches. That factual determination is contrary to Plaintiff's assertions, but it is the type of determination entrusted to the ALJs. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.

---

[5] Dr. Sharfman opined that Plaintiff could never crawl, with or without headache (R. 308), but Plaintiff has not argued that the inability to crawl eroded the sedentary occupational base.

Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 10, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record